O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KEVIN E. FLAHERTY,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security<br>Administration,<br><br>            Defendant. | Case No. SACV 07-00768-MLG<br><br>MEMORANDUM OPINION AND ORDER |

## I. Factual and Procedural Background

Plaintiff Kevin E. Flaherty ("Plaintiff") seeks review of the Commissioner's final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") pursuant to Titles II and XVI of the Social Security Act. Plaintiff was born on February 15, 1960. (Administrative Record ("AR") at 30). He has a high school education and relevant work experience as a cameraman, truck driver, and trade show display setup worker. (AR at 29).

Plaintiff filed applications for DIB and SSI on March 26, 2004, alleging disability as of January 20, 2000, based on amputation of the

left foot, bipolar disorder, and difficulty in being around people. (AR at 24, 28, 643-46). These applications were denied at the initial and reconsideration stages of the administrative process. (AR at 35-39, 41-46).

An administrative hearing was held on February 27, 2006, and continued to May 1, 2006, before Administrative Law Judge Helen E. Hesse ("the ALJ"). Plaintiff was represented by counsel and testified in his own behalf. (AR at 657-72, 682-92, 694-97, 703). A medical expert and a vocational expert also testified. (AR at 666-76, 693-717). On November 21, 2006, the ALJ issued a decision finding that Plaintiff was not under a disability, as defined in the Social Security Act. (AR at 24-31).

The ALJ evaluated Plaintiff's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the date he filed his applications for DIB and SSI, and that Plaintiff suffers from the severe impairments of status post left foot amputation, bipolar syndrome, and substance addiction disorder. (AR at 26). Although the ALJ found that Plaintiff's impairments meet the requirements of Listing 12.09 in conjunction with Listing 12.04, the ALJ concluded that "substance abuse was a contributing factor material to the finding of disability" and that without any drug-related limitations, Plaintiff's impairments would not meet the requirements of the Listings. (AR at 26-27); *see* Appendix 1, Subpart P, Regulations No. 4 ("the Listings"). With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff would be capable of performing a limited range of light work activity, including the ability to lift and carry 20 pounds occasionally

and 10 pounds frequently, sit without limitation, occasionally climb stairs, kneel, and crawl, and stand and/or walk about six hours in an eight-hour workday provided that he is able to change positions briefly for one to three minutes every hour. (AR at 27). Plaintiff would be precluded from using the left lower extremity for pushing, pulling, operating foot controls, climbing ladders/scaffolds, balancing, working at unprotected heights, and being around dangerous or fast moving machinery. (AR at 27). With respect to Plaintiff's mental impairments, the ALJ found that Plaintiff would be able to perform work in an object oriented environment with minimal supervision, but is restricted from jobs requiring high stress, hypervigilence, supervision of safety operations or others, intense interpersonal interactions, contact with the public, and more than brief superficial contacts with coworkers. (AR at 27-28). Based on this residual functional capacity, the ALJ determined that Plaintiff was not capable of performing his past relevant work. (AR at 29-30). With the assistance of the vocational expert, the ALJ found that Plaintiff was capable of performing other work that exists in significant numbers in the economy, including work as an assembler, packager, and addresser. (AR at 30-31). Therefore, the ALJ concluded that Plaintiff was not disabled. (AR at 31).

On February 24, 2006, the Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. (AR at 5-7). Plaintiff then commenced this action for judicial review.

The parties filed a Joint Stipulation of disputed issues on March 11, 2008. Plaintiff raises the following arguments:

1. The ALJ erred by rejecting the opinion of the examining psychologist. (Joint Stipulation 12-17).

2. The ALJ erred by relying on the testimony of the

vocational expert. (Joint Stipulation 18-20). Plaintiff seeks remand for a payment of benefits or, in the alternative, remand for a new administrative hearing and further development of the record. (Joint Stipulation at 23). The Commissioner requests that the ALJ's Decision be affirmed. (Joint Stipulation at 23). The Joint Stipulation has been taken under submission without oral argument.

## II. **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

//
//
//
//

4

## III. Discussion

### A. Examining Psychologist's Opinion

In January 2006, Phil Corrado, Ph.D. performed a comprehensive psychological evaluation of Plaintiff at the request of Plaintiff's attorney. (AR at 430-444). Dr. Corrado conducted an interview of Plaintiff, reviewed Plaintiff's psychiatric and medical records, and administered a variety of tests, including a mental status examination, the Beck Depression Inventory, the Beck Anxiety Inventory, and the Minnesota Multiphasic Personality Inventory ("MMPI"). (AR at 430-42). Plaintiff, who has a long history of homelessness and has struggled with severe psychological problems for many years, appeared "disorganized, confused and unable to control his racing thoughts." (AR at 443). Dr. Corrado found that Plaintiff has difficulty taking care of even his basic needs, and "appears to have self-medicated himself with alcohol and drugs in order to cope with his severe mental disorder." (AR at 443). However, Plaintiff reported that he had not used any illicit drugs since 2003. (AR at 432).

Dr. Corrado diagnosed Plaintiff with bipolar I disorder and assessed a Global Assessment of Functioning ("GAF") rating of 50.[1] (AR at 442). Based on Plaintiff's history, evaluation and test results, Dr. Corrado found Plaintiff had "severe" limitations in the following work functions: ability to maintain work pace appropriate to given work load; ability to perform complex and varied tasks; ability to relate to other people

---

[1] A GAF rating of 50 indicates serious symptoms e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders (DSM-IV) 32 (4th ed. rev. 2000).

beyond giving and receiving instructions; ability to influence people; ability to make generalizations, evaluations or decisions without immediate supervision; and ability to accept and carry out responsibility for direction, control, and planning. (AR at 442).

The ALJ gave "little weight" to Dr. Corrado's assessment of Plaintiff's mental functioning. (AR at 28-29). First, the ALJ noted that Dr. Corrado warned that Plaintiff's MMPI profile should be viewed with "extreme caution," as some of the validity scales indicated that Plaintiff had responded inconsistently or randomly. (AR at 440). The ALJ speculated that Plaintiff's performance on the MMPI may have reflected Plaintiff's attempt to "manipulate others in order to get his needs met." (AR at 29, 441). However, it is apparent from Dr. Corrado's own report that he properly considered the questionable validity of Plaintiff's MMPI results in his evaluation of Plaintiff's mental impairment. (AR at 440). Thus, Plaintiff's poor performance on the MMPI was not a valid basis for rejecting Dr. Corrado's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996) (if a treating or examining physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record).

The ALJ's next stated reason for rejecting Dr. Corrado's opinion -- the findings that Plaintiff suffers from severe levels of depression and anxiety were based on Plaintiff's self-reported symptoms -- is contrary to the evidence of record. (AR at 29). In addition to interviewing Plaintiff about his symptoms, Dr. Corrado reviewed Plaintiff's medical records, administered a mental status examination and other tests, and set forth clinical observations. (AR at 430-42). Further, courts have recognized the difficulty of producing objective evidence of mental

health conditions. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (when treating physician diagnosed claimant with depression, set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs, ALJ erred in finding claimant had not set forth sufficient evidence to substantiate mental impairment); *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985) (ALJ's finding that claimant has no medically determinable psychiatric condition was not supported by substantial evidence when uncontroverted medical opinion of treating psychiatrist, who set forth diagnoses, clinical evidence and symptoms of mental impairment, demonstrates that claimant has a disabling psychiatric impairment, and argument that the treating psychiatrist's opinion was properly disregarded "because it fails to set out 'supporting objective findings'" is without merit). Moreover, if the ALJ questioned the objective basis for Dr. Corrado's opinion, he should have inquired further. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

The ALJ also suggested that Dr. Corrado's opinion should be rejected because it was inconsistent with treating providers's findings that medications resulted in symptomatic improvement of Plaintiff's symptoms to a GAF of "80," indicating only mild limits in functioning. (AR at 29, 385). In support of this reason, the ALJ cites a discharge record dated July 29, 2003, from the Royale Therapeutic Residential Center, where Plaintiff had been hospitalized on a 5150[2] hold for 13 days. (AR at 29, 266-67, 385). As noted by the ALJ, the discharge record reflects that Plaintiff had improved considerably on medication. (AR at 385).

---

[2] Section 5150 allows for 72-hour evaluation of a person believed to be a danger to himself or others. Cal. Welfare and Inst. Code § 5150.

However, the record also shows that, at the time of discharge, Plaintiff was diagnosed as suffering from bipolar affective disorder and assessed with a GAF rating of "30/80." (AR at 385). Dr. Rath, the medical expert who testified at Plaintiff's hearing, explained, "30 is where he's at now, which is severely impaired and 80 is his highest level of functioning in the prior year, which is transient symptoms that are -- that would be expected." (AR at 698). Viewing the discharge record in conjunction with Dr. Rath's testimony, it appears that while Plaintiff did show improvement on medication, he still only had a GAF rating of 30[3] at the time of discharge, indicating serious impairment in communications or judgment or inability to function. DSM IV at 32. In addition, the record shows that Plaintiff was repeatedly assessed with GAF ratings between 30 and 40 over the next several months. (AR at 479, 585-88). Consequently, Dr. Corrado found that psychotropic medication did not significantly improve Plaintiff's mental condition. (AR at 443). Thus, Plaintiff's alleged improvement on medication was not a specific, legitimate reason for rejecting Dr. Corrado's opinion.

    Next, the ALJ found that Dr. Corrado's opinion was inconsistent with Dr. Rath's opinion. (AR at 29). At the hearing, Dr. Rath opined that Plaintiff would be capable of working, provided that he is compliant with medication and not using alcohol or drugs. (AR at 701-02, 706). Although Dr. Rath's opinion is in conflict with Dr. Corrado's opinion, a non-examining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of an examining psychologist's opinion. *See Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 602 (9th Cir. 1999).

---

[3] Plaintiff seems to acknowledge that he was assessed with a GAF rating of 80 at the time of discharge. (Joint Stipulation at 15).

Finally, the ALJ criticized Dr. Corrado's opinion because he was not a treating source. (AR at 29). Although Dr. Corrado's opinion was not entitled to treating source deference, the ALJ was still obligated to provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Moore v. Commissioner of Social Security Administration*, 278 F.3d 920, 925 (9th Cir. 2002) (quoting Lester v. Chater, 81 F.3d at 830-31). Dr. Corrado's status as an examining physician is not such a reason.

Accordingly, the ALJ's decision to reject Dr. Corrado's opinion was not supported by substantial evidence.[4]

## IV. Conclusion

For the reasons stated above, this matter shall be remanded so that the ALJ can further evaluate the medical evidence and make appropriate findings in a manner consistent with this decision. *See Bunnell*, 336 F.3d at 1112.

DATED: June 6, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge

---

[4] Because the ALJ improperly rejected Dr. Corrado's opinion and the record is not sufficiently developed to support a determination of disability without further proceedings, the Court will not decide whether the remaining issue raised by Plaintiff would independently require reversal. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate). The Court recommends, however, that the ALJ consider all of Plaintiff's arguments when determining the merits of his case on remand.